# EXHIBIT A

Robert Tauler (SBN 241964)
Betsy M. Tauler (SBN 330531)
bmauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

*Attorneys for Plaintiff*
*Nora Gutierrez*

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/05/2023 2:20 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| NORA GUTIERREZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONVERSE INC., a Massachusetts Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 23STCV15583<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 631)**<br><br>2. **VIOLATIONS OF THE CALIFORNIA UNAUTHORIZED ACCESS TO COMPUTER DATA ACT (CAL. PENAL CODE § 502(e))** |

COMPLAINT

EXHIBIT A
14

## JURISDICTION

1. Subject matter jurisdiction is proper in this Court because the amount in controversy is within this Court's jurisdictional limit.

2. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant conducts substantial business in Los Angeles County, California.

3. Venue is proper in the Los Angeles County Superior Court pursuant to Code of Civil Procedure, §§ 394, 395, and 395.5. Wrongful conduct occurred and continues to occur in this County. Defendant conducted and continues to conduct business in this County as it relates to its illegal wiretapping. Additionally, Defendant has sufficient minimum contacts in the State of California or otherwise purposefully avails itself of the California market.

## PARTIES

4. Plaintiff Nora Gutierrez ("Plaintiff") is a citizen of California residing within the Central District of California.

5. Defendant Converse Inc ("Defendant") is a Massachusetts corporation that owns, operates, and/or controls the above-referenced website.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

COMPLAINT

1

# FACTUAL ALLEGATIONS

8. Converse Inc. is the proprietor of Converse.com, an online platform that retails shoes, clothing, sports gear, and accessories to customers globally. During a browsing session on the Defendant's website, the plaintiff utilized the chatbox feature. However, the plaintiff was not informed that her conversations were being recorded and exploited for commercial surveillance purposes without her consent. Defendant's deceptive and invasive practices violate the privacy rights of its customers.

9. In the context of Converse's website, an iFrame (or Inline Frame) is a code that embeds content from another website (in this case, liveagent.com) within a web page. However, this code intercepts the inquiries that consumers believe are being sent directly to Converse and diverts them to liveagent.com.



10. Once liveagent.com gains access to the user's information, it stores it for its own purposes. Converse fails to inform its website users that their communications are being monitored and stored using a JSON file as seen below.

11. Live Agent also shares the data it collects and stores with Converse who adds the data to the existing profiles it has surreptitiously collected from unwitting users. According to its own stated disclosures, Converse collects a wide range of personal information from website users and consumers, including personal identifiers, unique device identifiers, protected characteristics such as age (via birthdate), and may deduce additional demographic details like gender; transaction details; precise location details, including GPS data, IP addresses; various details about website usage, such as links clicked, page views, searches, time spent, and interactions with others; inferences, social media interactions and other information.

12. Particularly troubling is Converse's practice of creating profiles through inferences drawn from various sources, including website visits, chatbox interactions, and store visits, a practice buried in Converse's privacy policy. See https://www.converse.com/c/privacy-policy. According to its privacy policy and numerous other disclosures disparately set forth in other legal documents on their website, Converse continuously collects and analyze information from users and scours social media platforms of prospective customers to gather more data. Arrangement with data companies like Liveagent (who use visitor data for their own purposes) further enables Defendant to extract and monetize as much personal information as possible, all while displaying no regard for reasonable expectations of privacy or any consumer concerns. In fact, these practices would shock the conscience of Converse's customers, many of which are minors.

13. Visitors would be shocked and appalled to know that Defendant secretly records those conversations and pays third parties to eavesdrop on them in real time to be "targets" for non descript mercantile campaigns. Defendant should not be permitted to acquire such extensive personal information from unsuspecting consumers who visit their website merely to make a purchase, such as ordering another pair of sneakers. This blatant disregard for consumer privacy is unacceptable and warrants appropriate scrutiny and intervention.

14. Within the past year, Plaintiff used the chatbox feature on Converse site, however, Defendant did not inform Plaintiff, or any of the Class Members, that Defendant was not

communicating with Converse at all when chatting online on the Converse.com website. Converse does not disclose its relationship at all to LiveAgent, or that converse is aiding, abetting, and paying third parties like LiveAgent is recording and commoditizing their communications using the seemingly harmless chat box feature. A feature which, because it is seemingly innocuous and appears to occur on Converse's website, would never give rise to the suspicion that it is really a means to collect data and subvert privacy rights.

15. Defendant did not obtain Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

## CLASS ALLEGATIONS

16. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website using cellular or landline telephony, and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

17. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

18. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

      a.      Whether Defendant caused electronic communications from class members with the Website to be recorded, intercepted, and/or monitored;

      b.      Whether Defendant aided and abetted a third party in eavesdropping on such communications;

      c.      Whether Plaintiff and Class Members are entitled to statutory penalties; and

      d.      Whether Class Members are entitled to injunctive relief.

19. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

20. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

21. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

**FIRST CAUSE OF ACTION**

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 631(a)**

22. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner,"

`````````````````````````````````````````````````````````````````````````````` (1)

"intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or

COMPLAINT

5

instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or

(2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". Here, Defendant does all three.

23. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

24. The software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct alleged herein.

25. At all relevant times, Defendant aided, abetted, and even paid third parties to eavesdrop upon such conversations.

26. Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

27. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class Members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Unauthorized Access to Computer Data Act

### Cal. Penal Code § 502 (e)

28. The California Unauthorized Access to Computer Data Act ("CUCA") makes it unlawful for parties to obtain data from a computer user outside of the scope of their authorization.

29. Specifically, Penal Code Section 502(c) makes a party liable who "knowingly accesses and without permission"

> (1) uses any computer data, in order to "wrongfully control or obtain" computer data, or
>
> (2) "makes use of any data from a computer…" outside of the scope of authorization.

30. By collecting personal identifiers, unique device identifiers, characteristics such as age, gender, precise location details, including GPS data, IP addresses; various details about website usage, such as links clicked, page views, searches, time spent, and interactions with others; inferences, social media interactions and other information Defendant has exceeded the scope of its authorization from Plaintiff.

31. In fact no authorization was provided by Plaintiff at all and no authorization for the data collection by means of using a chat box is ever requested or given.

32. Penal Code Section 502(c)(6) makes third parties liable if they "[k]nowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section."

33. By allowing LiveAgent to collect data from Plaintiff, including her IP address, geolocation, and browser history, and allowing it to use this information for its own purposes, Defendant has violated CUCA.

34. Section 502(e) provides a private right of action for "compensatory damages and injunctive relief or other equitable relief." Additionally, a court may award reasonable attorney's fees and punitive damages on a case-by-case basis.

### **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2. An order declaring Defendant's conduct violates CIPA and CUCA;

3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA and CUCA;

6. Punitive damages;

7. Prejudgment interest;

8. Reasonable attorneys' fees and costs; and

9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: July 5, 2023            TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler, Esq.
*Attorneys for Plaintiff*
*Nora Gutierrez*

1 | **DEMAND FOR JURY TRIAL**

2 | Plaintiff Nora Gutierrez hereby demands a trial by jury.

DATED: July 5, 2023                     TAULER SMITH LLP

By:   */s/ Robert Tauler*
        Robert Tauler, Esq.
        *Attorneys for Plaintiff*
        *Nora Gutierrez*